IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RESHUNN CHAMBERS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-1062-K-BH |
| | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| COMMISSIONER NANCY A. | § | |
| BERRYHILL, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation are *Federal Defendants' Motion to Dismiss Plaintiff's Amended Complaint*, filed November 18, 2019 (doc. 61); *Federal Defendants' Motion for Summary Judgment*, filed June 5, 2020 (doc. 95); and *Plaintiff's No-Evidence Motion for Summary Judgment Affidavit in Support Order Page Government Defendant SSA-Commissioner Nancy A. Berryhill and Mr. Leonard Burns, Claim Representative,* and *Plaintiff's No-Evidence Motion for Summary Judgment Affidavit in Support Order Page Government Defendant U.S. Department of Education-Betsy Devos, Secretary*, filed on June 19, 2020 (docs. 104, 106). Based on the relevant filings and applicable law, the federal defendants' motion to dismiss should be **GRANTED in part**, and the motions for summary judgment should all be **DENIED as moot**.

## I. BACKGROUND

On May 2, 2019, Reshunn Chambers (Plaintiff) sued multiple private entities and government officials, including the Secretary of the Department of Treasury (Treasury Secretary), the Secretary of the Department of Education (Education Secretary), and the Commissioner of the Social Security

---

[1]By *Special Order No. 3-251*, this *pro se* case was automatically referred for full case management.

Administration (Commissioner),[2] in their official capacities only, as well as a claims representative with the Social Security Administration (Claims Rep) in his official and individual capacities (collectively Federal Defendants), over his federal benefits.  (*See* docs. 3, 56.)  He seeks $5 million dollars per defendant, immediate release of $100,000.00 allegedly held by the defendants that is currently due and owed to him, and a declaration that the defendants "maliciously, intentionally, and illegally" withheld his monthly disability benefits "without legal, just cause." (*See* doc. 56 at 15-16.)

In 2003, Plaintiff sustained significant back injuries as a result of a work-related accident involving an eighteen-wheeler. (doc. 56 at 2.)[3]  He applied for disability benefits with the Social Security Administration (SSA), and was ultimately awarded disability benefits in 2007. (*Id.*)

On July 9, 2009, Plaintiff applied for a total and permanent disability discharge of his student-loan debt with the Department of Education (DOT).  (doc. 62 at 4.)  On April 4, 2011, he was notified that he was approved for a three-year conditional discharge, effective until July 19, 2012, and that a full discharge was contingent on him meeting certain conditions, including, among other things, providing suitable annual certifications of his income and employment status to the DOT. (*Id.* at 5.)  Between December 2011 and September 2012, Plaintiff was sent multiple letters requesting employment income documentation and explaining that his student loans would be reinstated if he did not provide the information.  (*Id.* at 8-17.)  On June 9, 2014, Plaintiff was informed that he was ineligible for final discharge because he had failed to provide the requested documentation, and that his student-loan debt had been reinstated. (*Id.* at 18.)  The notice letter informed him that his student

---

[2]Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019, so he is automatically substituted as a party under Fed. R. Civ. P. 25(d).

[3]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

loan would be returned to conditional discharge status if he submitted the requested documentation within a year. (*Id.*) Plaintiff did not appeal this decision or provide the documentation.

On March 18, 2015, the SSA notified Plaintiff that he was no longer eligible to receive benefits as of January 2012, due to engaging in substantial work. (*Id.* at 21-23.) The notice letter informed him of his right to seek an administrative appeal within 60 days after receiving the letter. (*Id.* at 22.)  On March 23, 2015, the SSA sent Plaintiff another letter explaining that he had been overpaid benefits and was required to repay the overpayment. (*Id.* at 37.)  Plaintiff requested an administrative appeal of both the cessation of benefits and overpayment demand.  (doc. 67 at 17.) On April 30, 2018, the SSA notified Plaintiff that it had reviewed the evidence from his disability claim and revised its decision to find that his disability was continuing.  (doc. 62 at 24-28.)  On September 12, 2018, the SSA notified Plaintiff that he was entitled to payments from December 2014 forward, but that he had been overpaid $22,128.90, and that this amount would be deducted from future disability payments. (*Id.* at 29.)  Plaintiff administratively appealed this determination.  (doc. 67 at 17.)  On January 19, 2019, Plaintiff went to a local SSA office to request a "crucial check," and he was advanced $1,495.00. (doc. 62 at 33.)

On March 20, 2019, Plaintiff was notified that his student-loan debt with the DOT had been referred to the Department of the Treasury (DOT) for administrative offset, and that up to 15 percent of his future Social Security benefits would be withheld and applied against that debt. (doc. 62 at 32.) In May 2019, Plaintiff informed the student loan servicer that he intended to apply for a discharge based on total and permanent disability, and collection on his student-loan debt was suspended for a 120-day period. (*Id.* at 38.)  Because Plaintiff did not submit a new application for discharge, the suspension of collection activities was lifted on August 22, 2019. (*Id.*)

3

On May 19, 2019, the SSA sent Plaintiff a letter informing him that he was obligated to repay the crucial check advance from January 2019, and that he could either repay it in full, or it would be withheld from his future payments. (*Id.* at 33-34.)  On May 21, 2019, Plaintiff administratively appealed this decision by submitting a reconsideration request to the SSA; he also complained about the reduction of his monthly benefits and about "wrongful and illegal calculations against [him]." (*Id.* at 36.)  The SSA responded to the reconsideration request by letter dated May 23, 2019, explaining that the reduction of his monthly payments was because a substantial amount of past wages had been removed from his work history, which caused his monthly benefit to be recomputed at a lower amount.  (*Id.* at 37.)  Plaintiff allegedly appealed this decision.

On November 4, 2019, Plaintiff filed his verified amended complaint, generally asserting claims for "discriminatory practices;" "wrongful and illegal terminating, suspending, [and] denial of disability monthly benefits;" "negligent acts and omissions [and] [r]etaliation for filing back-claims and under pay claims" in violation of agency regulations; "[d]efamation, slander, libel, and reporting of adverse credit reporting;" "dereliction of duty" for "threats demanding overpayments [and] threats of garnishment of [ ] disability monthly benefits payments;" breaches of fiduciary duty; fraud; misrepresentations and deceptive trade practices; tortious interference; breach of contract; and violations of Title II of the Social Security Act (Act), Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), and the Fair Debt Collection Practices Act (FDCPA). (*See* doc. 56 at 12-13)  He alleges that the SSA and Claims Rep (collectively SSA Defendants) "maliciously, wrongfully and illegally withheld" over $30,000.00 of his "disability monthly benefits payments" between April 2014 and May 2019, and that they "terminated, suspended, and otherwise denied [his social security benefits] without first obtaining

4

authorization or approval from the United States Social Security Administration Appeals Council."
(*Id.* at 7-8.)  He claims that "[t]his illegal conduct resulted in [him] not receiving a [disability check]
on at least two [ ] occasions" in 2017 and 2018, including a 2018 check for $33,000.00. (*Id.* at 8.)
He alleges that the SSA and the DOT are attempting to withhold 15 percent of his monthly disability
payments to "federally offset" a student-loan debt that he does not owe. (*Id.* at 8-9.)  He claims that
this violates his due process rights and the FDCPA because he never received "timely notice of the
purported debt or the proper and timely right to appeal." (*Id.*)

Plaintiff also alleges that the DOE has engaged in discriminatory practices, acts, and
omissions in violation of the ADA, the Rehabilitation Act, and the FDCPA because it is using "unfair
or unconscionable means" to collect a student-loan debt that he does not owe, including "subjecting
him to harassing, abusive, or fraudulent debt collection tactics." (*Id.* at 9-10.)  He claims he was
awarded a total and permanent disability discharge of his student loans, but the DOE refuses to honor
that discharge.  (*Id.* at 10.)  He also claims the DOE violated his rights to due process and equal
treatment because it "did not afford him an opportunity to timely appeal any decision that would
adversely affect his award for Total and Permanent Disability Discharge." (*Id.*)

Federal Defendants move to dismiss all claims against them in their official capacities. (doc.
61, 62.)  They also move for summary judgment, and Plaintiff in turn seeks summary judgment on
his claims against them. (docs. 95, 97, 104-07.)

## II.  RULE 12(b)(1)

Federal Defendants, in their official capacities,[4] move to dismiss Plaintiff's tort claims against

---

[4] Official capacity suits against federal employees are treated as suits against the United States. *See Hafer v.*
*Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Turner v. Houma Mun. Fire and*
*Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000).

them and his claims against SSA Defendants under Rule 12(b)(1) of the Federal Rules of Civil

Procedure for lack of jurisdiction. (doc. 61 at 14-17.)

A.    <u>**Rule 12(b)(1) Standard**</u>

A motion to dismiss under challenges a federal court's subject matter jurisdiction.  *See* Fed.

R. Civ. P. 12(b)(1).  Federal courts are courts of limited jurisdiction; without jurisdiction conferred

by the Constitution and statute, they lack the power to adjudicate claims.  *Kokkonen v. Guardian Life*

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  They "must presume that a suit lies

outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party

seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any

stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y & H Corp.*, 546 U.S.

500, 506 (2006).  A court must dismiss the action if it determines that it lacks jurisdiction over the

subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th

Cir. 1998).  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the

court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

merits."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).  A dismissal

under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from

pursuing a claim in a court that does have proper jurisdiction."  *Id*.  Accordingly, considering Rule

12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with

prejudice."  *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the

complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*. Facial attacks are usually made early in the proceedings. *Id*.

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, Federal Defendants provide an Appendix in support of their motion to dismiss that includes copies of documents related to Plaintiff's disability benefits, student loans, and offset. (*See* doc. 62.) The motion therefore presents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations. "Because Plaintiff does not contest [Federal Defendants'] proffered evidence, however, there are no disputed facts to resolve." *McClain v. Bueschel*, No. 3:09-CV-1721-M, 2010 WL 742452 at *2 (N.D. Tex. Mar. 2, 2010).

## B.    Benefits Claims

Federal Defendants argue that all claims against SSA Defendants should be dismissed for lack of subject matter jurisdiction because Plaintiff has failed to receive a "final decision" from the

Commissioner and has therefore failed to exhaust his administrative remedies. (doc. 61 at 14-16.)

### 1.    *Judicial Review*

A federal court's jurisdictional authority to review the decisions of the SSA on a claimant's disability benefits is found in 42 U.S.C. §§ 405(g) and (h).  "Section 405(g) sets the terms of judicial review for" decisions on a claimant's disability benefits under Title II and Title XVI.[5]  *Smith v. Berryhill*, — U.S. —, 139 S. Ct. 1765, 1772 (2019).  It provides, in relevant part, that a claimant may obtain judicial review of " any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g).

"Section 405(h) purports to make exclusive the judicial review method set forth in § 405(g)." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000).  It provides as follows:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as [provided in § 405(g)].  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).  The Fifth Circuit recently explained that the second sentence of § 405(h) serves two purposes: it "channels claims challenging certain types of agency decisions . . . into § 405(g)", and it "ensures that § 405(g) is the sole jurisdictional avenue for the channeled claims." *In re Benjamin*, 932 F.3d 293, 300 (5th Cir. 2019).  Although "§ 405(h)'s second sentence looks like it might apply to every and any decision by the Commissioner," the Fifth Circuit interpreted the second sentence as applying "only where the would-be plaintiff is challenging a decision regarding his

---

[5]Title II is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need;" Title XVI is a welfare program that provides supplemental security income benefits "to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988) (citing § 401 *et seq.* (Title II) and § 1381 *et seq.* (Title XVI)).

8

entitlement to benefits." *Id.* "[W]here an individual is *not* challenging a decision regarding his entitlement to benefits made after an application for payment and therefore *not* receiving the statutorily-prescribed hearing under [§ 405(b)(1)], his claim never gets channeled under § 405(h)'s second sentence or reviewed by a court under § 405(g)." *Id.* at 301 (emphasis original). Because § 405(h) "channeled only decisions of the Commissioner for which the *statute* prescribed a hearing—namely, claims addressing the entitlement to benefits," a claimant cannot rely on § 405(g) to confer federal jurisdiction on other types of claims, even if agency *regulations* provide for a hearing on decisions involving those claims. *Id.* at 302 (citing *Califano v. Sanders*, 430 U.S. 99, 102 (1977)) ("It did not matter that agency *regulations* provided for a hearing on motions to reopen.") (emphasis original); *see Becker v. Saul*, No. 5-17-CV-00892-FB-RBF, 2020 WL 4384205, at *2 (W.D. Tex. July 30, 2020) (quoting *In re Benjamin*, 932 F.3d at 302) (noting that claims "'primarily about [ ] entitlement to benefits' . . . would be subject to judicial review under § 405(g) and channeled by § 405(h)," while "[o]ther kinds of claims would not").

Here, Plaintiff claims that the Court has federal question jurisdiction on all his claims under 28 U.S.C. § 1331. (doc. 56 at 5.)[6] He is not challenging an "initial benefits determination," but rather, subsequent decisions of the Commissioner to suspend benefits, recover overpaid benefits, and reduce monthly benefits. Other than judicial review of a final decision made after a hearing, § 405(h) precludes federal question jurisdiction of all claims against the SSA. *See Shalala*, 529 U.S. at 10 (holding that § 405(h) barred social security benefits cases with jurisdictional grounding in § 1331). The Fifth Circuit has made clear that federal court jurisdiction under §§ 405(g) and (h) is limited to judicial review of claims challenging an initial benefits determination. *See In re Benjamin*, 932 F.3d

---

[6]Plaintiff's amended complaint asserts federal question jurisdiction, but incorrectly cites this as arising under 28 U.S.C. § 1332. (*See* doc. 56 at 5.)

at 301-02. Plaintiff cannot rely on § 405(g) to seek judicial review of his SSA claims because they do not arise from an initial benefits determination; he needs an independent source of jurisdiction. *See Becker v. Berryhill*, 772 F. App'x 215 (5th Cir. 2019) (explaining that because plaintiff could not rely on § 405(g) to challenge a later decision to suspend his benefits, "he would need an independent source of jurisdiction"). Because Plaintiff fails to show that the Court has subject matter jurisdiction over his SSA claims, they should be dismissed for lack of subject matter jurisdiction.[7]

### 2. Administrative Exhaustion

Even if Plaintiff's claims against SSA Defendants are subject to judicial review under §§ 405(g) and (h), they are still subject to dismissal for lack of jurisdiction for failure to exhaust administrative remedies.

#### a. Final Decision

As discussed, the Act allows a claimant to obtain judicial review of a "final decision of the Commissioner" by filing a civil action in federal district court. *See* 42 U.S.C. § 405(g). The Supreme Court has held that the "final decision" requirement has two elements: "first, a 'jurisdictional' requirement that claims be presented to the agency, and second, a "waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted." *Smith*, 139 S. Ct. at 1773-74 (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). The nonjurisdictional element of administrative exhaustion may either be waived by the agency or, in exceptional cases, by the courts.

---

[7]Two recent decisions from the Western District of Texas explain that it remains unclear from *In re Benjamin* whether a federal court has subject matter jurisdiction to hear a challenge of a decision to terminate or suspend benefits when the claimant was afforded the opportunity by the SSA to appeal that decision, or otherwise shows that he had been entitled to a hearing. *See Becker*, 2020 WL 4384205, at *2 (analyzing *In re Benjamin*); *Waldon v. Saul*, No. 5-19-CV-00028-OLG-RBF, 2020 WL 3579814, at *2 (W.D. Tex. Mar. 31, 2020), *adopted by* 2020 WL 3579819 (W.D. Tex. Apr. 20, 2020) (same). Plaintiff has not shown that he is entitled to an administrative hearing on his claims, nor whether it is required by statute or agency regulation. Nevertheless, as fully discussed below, because Plaintiff has not exhausted his administrative remedies, the Court still lacks jurisdiction over these claims. *See Waldon*, 2020 WL 3579814, at *2 ("Ultimately, this question is beside the point because even if Waldon was at some point entitled to a hearing in connection with the cessation of benefits, she never sought a hearing or otherwise exhausted her available administrative remedies.").

*Eldridge*, 424 U.S. at 330.

The Act does not define "final decision," but authorizes the SSA "to give meaning to that term through regulations." *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). A claimant receives a "final decision" after proceeding through a four-step process: (1) the claimant files a claim for initial determination as to his eligibility; (2) if dissatisfied with the initial determination, he must seek reconsideration; (3) if still dissatisfied, he must request a hearing before an Administrative Law Judge (ALJ); (4) if he disagrees with the ALJ's decision, he must appeal it to the Appeals Council. *See* 20 C.F.R. §§ 404.900(a), 416.1400; *see also Smith*, 139 S. Ct. at 1772 ("Modern-day claimants must generally proceed through a four-step process before they can obtain review from a federal court."). Only after completing this four-step administrative review process does the claimant receive the final decision of the Commissioner and the right to seek judicial review in a federal district court. *See Sims*, 530 U.S. at 106-07; *Smith*, 139 S. Ct. at 1772.

Here, Plaintiff seeks judicial review of the SSA's decisions to terminate his disability payments for several months, withhold prior benefits allegedly owed to him, offset overpaid benefits against his future payments, and reduce his monthly payment amounts based on a recalculation of past wages. He acknowledges that he has submitted approximately fifteen requests for appeal on these claims, which remain pending with the SSA. (*See* doc. 67 at 10.)[8] Because a final decision has

---

[8] Because Plaintiff is proceeding *pro se*, his pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). As a general rule, claims and allegations that are not raised in the complaint, but rather raised for the first time in a response to a dispositive motion are not properly before the court. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)*; see also Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been

11

not been made by the SSA on any of these claims, Plaintiff has not exhausted his administrative remedies. *See Sims*, 530 U.S. at 106-07; *Caesar v. Barnhart*, 191 F. App'x 304, 304 (5th Cir. July 24, 2006) ("A Social Security claimant must exhaust administrative remedies before seeking review in federal court.").

### b.    Exhaustion Waiver

Plaintiff argues that the exhaustion requirement should be waived because the SSA "has committed unlawful conspiracy to harass and deprive [him] of his rights to due process, equal protection, equal treatment, and various other civil rights violations." (doc. 67 at 8.)

"While § 405(g) delegates to the SSA the authority to dictate which steps are generally required, exhaustion of those steps may not only be waived by the agency, but also excused by the courts." *Smith*, 139 S. Ct. at 1773-74 (citations omitted).  The Supreme Court has approved three factors to consider in waiving the exhaustion requirement: (1) whether a claim is collateral to a demand for benefits, (2) whether exhaustion would be futile, and (3) whether the harm suffered pending exhaustion would be irreparable. *See Chamberlain v. Barnhart*, 382 F. Supp. 2d 867, 872 (E.D. Tex. 2005) (citing *Mathews*, 424 U.S. at 330-32).  "The ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of [these] factors, but should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484.

Here, Plaintiff alleges that SSA Defendants have unlawfully delayed the proceedings on his

---

willfully discriminated against should be treated as a motion to amend); *see also Debowale v. U.S. Inc.,* 62 F.3d 395 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it").  "This is particularly true where ... the litigant is *pro se* and has not yet made any amendments to her complaint." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010).  Accordingly, Plaintiff's allegations and claim for violations of the Privacy Act, 5 U.S.C. § 552a, in his response to Federal Defendants' motion to dismiss are construed as a motion to amend, the motion is granted, and the new allegations and Privacy Act claim are considered.

appeals of the decisions to terminate disability benefits, to deny restoration of benefits, and to impose civil monetary penalties. (doc. 67 at 26.)  He claims that he "currently has approximately 15 outstanding appeal(s) request that has[sic] been filed by [him] over 4 years, to date, to which no hearing(s) have been scheduled, even though local field office representative(s) have stated that the appeal process takes approximately 6 months to 1 year before a hearing is held." (*Id.* at 10.)  He also claims that SSA Defendants "continued to assess adverse decisions/actions against [him] and without available remedies, such as access to due process, including additional monetary penalties, to which [he] appealed but not processed by [them] over four (4) years to date." (*Id.* at 24-25.)

Plaintiff's claims of constitutional violations are not collateral to his claims for benefits. Waiver is not applicable where "a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding" because the claim is not collateral to the benefits determination. *Bowen*, 476 U.S. at 484.  Although Plaintiff has framed his claims in constitutional terms by alleging denial of his rights to due process, equal protection, and equal treatment, they relate directly to his claims for benefits—the amount to which he is entitled, whether those amounts have been paid, and how the amounts have been calculated. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285-86 (5th Cir. 1999) (explaining that when a constitutionally-based claim is "'inextricably intertwined' with a substantive claim of administrative entitlement," it is not collateral so as to waive the exhaustion requirement).  To fully address Plaintiff's claims of constitutional violations through the improper enforcement of Social Security regulations, "a court would necessarily have to immerse itself in those regulations and make a factual determination as to whether" SSA Defendants were actually in compliance. *See id.*

Plaintiff also does not show that resorting to the administrative scheme would be futile in this

case. Although he claims that he has waited four years for his appeals to be processed, the undisputed evidence of record does not support this allegation. For example, after he appealed the SSA's March 2015 decision to suspend benefits, the SSA revised its decision finding he was entitled to benefits in April 2018. (*See* doc. 62 at 22, 24-28.) When Plaintiff requested review of the May 2019 notice of payment amount and of overpaid benefits, the SSA sent him a letter explaining the calculation of his benefits. (*See id.* at 33-37.) This demonstrates that SSA Defendants have responded to his claims and requests for review, and that they have provided him notice of SSA decisions. While the decision to suspend benefits, reduce the amount of benefits, and recover overpaid benefits, is not a final determination subject to judicial review, each decision may culminate in an appealable determination if his claims are ultimately denied. Plaintiff can seek judicial review of any procedural non-compliance by SSA Defendants after a final determination regarding his claims has been made by the SSA. *See Life Source Enters., Inc. v. Shalala*, 2000 WL 33348793, at *7 (W.D.Tex. Nov. 9, 2000); *see also Cplace Springhill SNF, LLC v. Burwell*, No. CIV.A. 14-3139, 2015 WL 1849499, at *5 (W.D. La. Apr. 22, 2015) ("This Court draws a distinction between complete and total preclusion of review versus simple postponement of review and finds that any possible delay in this matter does not warrant circumvention of the administrative appeal process as a whole.").

Further, there is no reasonable basis to conclude that Plaintiff will suffer irreparable harm pending exhaustion. To meet the irreparability requirement for waiver, the claimant must show that denial of relief will cause a harm; it does not account for past injuries. *See Griego v. Leavitt*, No. CIV.A. 3:07-CV-1708-D, 2008 WL 2200052, at *11 (N.D. Tex. May 16, 2008) ("The irreparable injury factor does not account for past injuries but only considers those harms that will ensue from

14

requiring [the plaintiff] to exhaust his administrative remedies."). If "the agency's wrongful decision can be rectified with retroactive payments, the claim presents no danger of irreparable harm or futile pursuit of administrative remedies." *Chamberlain*, 382 F. Supp. 2d at 873 (citing *Mathews,* 424 U.S. at 330-32). "Frustration with the administrative process does not confer subject matter jurisdiction." *Fabian v. Colvin*, No. SA-14-CV-141-XR, 2014 WL 3952803, at *2 (W.D. Tex. Aug. 13, 2014). While Plaintiff complains of a prolonged four-year administrative process, he fails to present proof that ultimate award of retroactive payments will not remedy the wrongful decisions he allegedly suffered. *See Mack v. Astrue*, No. CIV.A. 09-3337, 2010 WL 2218239, at *4 (S.D. Tex. May 14, 2010), *adopted by* 2010 WL 2218227 (S.D. Tex. June 2, 2010) (finding allegations that "the SSA has caused inordinate delays in [plaintiff's] attempts to get disability benefits" and that "the stress and the ordeal of having to go through the inadequate appeal process [would] trigger a medical set back," failed to show that plaintiff would suffer irreparable harm if ordered to exhaust his administrative remedies).

Because Plaintiff has not exhausted his administrative remedies, and has not shown that waiver of the exhaustion requirement is appropriate in this case, there is no subject matter jurisdiction under § 405(g). Accordingly, Plaintiff's claims challenging the decisions of the SSA should be dismissed for lack of jurisdiction under Rule 12(b)(1).

## C.    Tort Claims

Federal Defendants contend that to the extent that Plaintiff intends to assert tort claims against them in their official capacities under the Federal Tort Claims Act (FTCA), the Court lacks subject matter jurisdiction because he failed to exhaust administrative remedies. (doc. 61 at 17-18.)

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all

without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009).

Under the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008); *see also* 28 U.S.C. §§ 1346(b)(1), 2671-2680. To successfully sue under the FTCA, a claim must be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the federal government; (5) while acting within the scope of his or her employment; and (6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred. 28 U.S.C. § 1346(b); *see FDIC*, 510 U.S. at 477-78. The only proper defendant in an FTCA action is the United States, and "an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction." *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988) (citations omitted).

Here, Plaintiff names only Commissioner, Claims Rep, Treasury Secretary, and Education Secretary as the governmental defendants. (*See* doc. 56.) None of these parties is a proper defendant to an FTCA claim. *See Galvin*, 860 F.2d at 183. Plaintiff's FTCA claim against Federal Defendants should therefore be dismissed for lack of subject matter jurisdiction. *Id.*; *see also Ogbolu v. United States Immigration & Customs Enf't*, No. H-06-0115, 2006 WL 3152694 at *3 (S.D. Tex. Nov. 1,

2006) (dismissing plaintiff's FTCA claims against ICE for lack of jurisdiction).

Even if his claims against Federal Defendants are liberally construed as an attempt to sue the United States, Plaintiff must exhaust his administrative remedies before filing suit. *See McNeil v. United States*, 508 U.S. 106, 112-13 (1993); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995). Section 2675(a) of Title 28 of the United States Code provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Absent compliance with the statute's exhaustion requirement, a federal district court is without jurisdiction to consider any claims under the FTCA. *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989). Because it is clear from the face of the complaint that Plaintiff has not exhausted his administrative remedies as required under § 2675(a), and he has not alleged that this exhaustion requirement should be excused, subject matter jurisdiction over any FTCA claims against the United States is also lacking. *See Miller v. Stanmore*, 636 F.2d 986, 991 (5th Cir. 1981).

### III.  RULE 12(b)(5)

Federal Defendants also move to dismiss under Rule 12(b)(5) because Plaintiff failed to show that "service has been properly effected—i.e., by a qualified person who is not a party—on any of the federal defendants."  (doc. 61 at 18.)

Rule 12(b)(5) permits a challenge to the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint. *See* Fed. R. Civ. P. 12(b)(5); *Coleman v. Bank of*

17

*New York Mellon*, 969 F. Supp. 2d 736, 745 (N.D. Tex. 2013).  A federal court is without personal jurisdiction over a defendant unless that defendant has been served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure. *See id.* (citing *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) and *Pavlov v. Parsons*, 574 F. Supp. 393, 399 (S.D. Tex. 1983)).  Rule 4(c) places the burden on plaintiff to ensure that defendants are properly served with summons and a copy of the complaint. Fed. R. Civ. P. 4(c)(1).

Here, Plaintiff's proof of service states that he himself served Federal Defendants "via Certified Mail Request Return Receipt utilizing the United States Postal Services (USPS)." (*See* doc. 12 at 6.)  He contends that he has "sufficiently and properly served Federal Defendants" because the USPS is neither a party to this litigation nor an interested person. (doc. 67 at 27.)  This position is contrary to established law. *See Hassell v. United States*, 203 F.R.D. 241, 246 (N.D. Tex. 1999) (finding service defective when a party mails documents to the defendant).  Because the federal rules do not "permit a *party* to serve a summons or process," a plaintiff fails to comply with the procedural requirements for adequate service of process when he personally mails the summons to defendants through certified mail. *Hill v. N. Texas State Hosp.*, No. CIV. 7:09-CV-158-O, 2010 WL 342227, at *1 (N.D. Tex. Jan. 26, 2010) (emphasis original).  Accordingly, Plaintiff's attempt to serve Federal Defendants was ineffective.

Plaintiff argues that Federal Defendants waived the defenses of improper service of process because the United States Attorney's Office (USAO) had agreed to accept service of process. (doc. 67 at 27.)  Under Rule 4(i), when suing a federal agency or employee, a party must serve the United States by serving the United States Attorney, as well as the Attorney General and the individual agency or employee.  *See* Fed. R. Civ. P. 4(i)(1)-(3).  Although the USAO agreed to accept service

of process, it did so only on behalf of the United States Attorney, and explained that it lacked the authority to accept service of process on behalf of any other person or entity. (doc. 24 at 1-2.) Because Plaintiff has not shown that he properly served the United States, or that the USAO was authorized to waive service of process on their behalf, he has not shown effective service of process on Federal Defendants in their official capacities. *See McGowan v. Johnson*, No. 3:15-CV-1640-M-BH, 2016 WL 4468097, at *3 (N.D. Tex. Aug. 1, 2016), *adopted by* 2016 WL 4446629 (N.D. Tex. Aug. 24, 2016) (finding plaintiff did not properly serve the United States by serving a staff attorney for the Department of Homeland Security because he failed to show that the staff attorney was authorized to accept service on its behalf).[9]

Dismissal for insufficient service under Rule 12(b)(5) is typically not appropriate "unless there is no reasonably conceivable means of acquiring jurisdiction over the person of a defendant" and is "usually without prejudice to allow plaintiff an opportunity to effect proper service." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 633 (N.D. Tex. 2007) (citations omitted). Federal Defendants additionally move for dismissal of Plaintiff's claims under Rule 12(b)(6) for failure to state claim. (doc. 61 at 10.) Based upon the recommended resolution of the 12(b)(6) motion as discussed below, dismissal without prejudice under Rule 12(b)(5) is unnecessary, and Federal Defendants' motion to dismiss for insufficient service should be denied. *See Florance*, 500 F. Supp. 2d at 633 (denying defendants' motion to dismiss under Rules 12(b)(5) and 12(b)(2) because "dismissal for purposes of allowing plaintiff to serve defendants properly [was] unnecessary" when those same defendants "also

---

[9]Because a party must also properly serve the United States when suing a federal employee "in an *individual capacity* for an act or omission occurring in connection with duties performed on the United States' behalf *(whether or not the officer or employee is also sued in an official capacity)*," Plaintiff's failure to properly serve the United States also demonstrates ineffective service as to his individual capacity claims against Claims Reps. *See* Fed. R. Civ. P. 4(i)(3) (emphasis added).

filed motions to dismiss under Rule 12(b)(6)" that were granted); *see also Coleman*, 969 F. Supp. 2d at 746-54 (considering arguments for dismissal under Rule 12(b)(6) even though dismissal under Rule 12(b)(5) was proper).

## IV.  RULE 12(b)(6)

Federal Defendants, in their official capacities, move to dismiss the remaining claims against them under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 61 at 10-14, 17.)

### A.  Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above

20

the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon

which relief may be granted when it fails to plead "enough facts to state a claim to relief that is

plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw reasonable inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a "probability requirement," but it
> asks for more than a sheer possibility that a defendant has acted unlawfully. Where
> a complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570;

*accord Iqbal*, 556 U.S. at 683.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion.

*Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the

pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes

of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th

Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783

(5th Cir. 2007).  However, "[i]f . . . matters outside the pleadings are presented to and not excluded

by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll

parties must be given a reasonable opportunity to present all the material that is pertinent to the

motion."  Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the

complaint.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation

omitted).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the

pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*

*v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted). Accordingly, documents falling in these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

As discussed, Federal Defendants provide copies of documents related to Plaintiff's disability benefits, student loans, and offset. (*See* doc. 62.)  Although these documents may be considered central to Plaintiff's claims, and therefore part of the pleadings, *see Collins*, 224 F.3d at 498-99, they have not been considered for purposes of the Rule 12(b)(6) motion in an abundance of caution. Conversion of Federal Defendants' motion to dismiss into a motion for summary judgment is therefore unnecessary. *See id.*; *Katrina Canal Beaches*, 495 F.3d at 205.

## B.    Treasury Secretary

Federal Defendants argue that Plaintiff fails to state any claim for relief against the Treasury Secretary because the DOT's "only involvement in the case was in a purely ministerial role in administering the federal offset program." (doc. 61 at 10-11.)

The Treasury Offset Program (TOP) is a federal program governed by the Debt Collection Improvement Act of 1982, 31 U.S.C. §§ 3701 *et seq.*, which authorizes the DOT to collect delinquent debts owed to federal agencies by administrative offset. *See* 31 U.S.C. § 3716(c)(3)(A)(i).  An administrative offset is the "practice of withholding federal payment in satisfaction of a debt." *Reeves v. Astrue*, 526 F.3d 732, 738 n.3 (11th Cir.), *cert. denied*, 555 U.S. 1072 (2008); *see* 31 U.S.C. § 3701(a)(1) (defining administrative offset as "withholding funds payable by the United States . . . to, or held by the United States for, a person to satisfy a claim").  All federal payments, including Social Security benefit payments, are eligible for administrative offset under the TOP. *See Lockhart v.*

22

*United States*, 546 U.S. 142, 145-46 (2005) (authorizing federal government to collect student loan debt by way of offset against social security benefits); *Champion v. United States Gov't Dep't of Treasury*, No. 6:09-CV-574, 2010 WL 5600205, at *2 (E.D. Tex. Dec. 29, 2010), *adopted sub nom.*, 2011 WL 167031 (E.D. Tex. Jan. 18, 2011), *aff'd sub nom.*, 430 F. App'x 314 (5th Cir. 2011) ("The Treasury Offset Program allows the Department of the Treasury to collect delinquent debts owed to federal agencies by administrative offset of Social Security benefits."). When a federal agency with a claim against the debtor certifies to the DOT that his debt is eligible for collection by offset, and that it has complied with all notice requirements to him, the DOT must administratively offset the debt. *See* 31 U.S.C. §§ 3716(c)(1)(A), (c)(6); 31 C.F.R. § 285.1(d)(3); *see also Hughes v. United States*, No. CIV.A. 14-0998, 2015 WL 4477961, at *2 (E.D. La. July 22, 2015) ("[o]ffset is a mandatory, non-discretionary function").

Here, Plaintiff alleges that he was notified that up to 15 percent of his future Social Security payments will be withheld and applied against a student-loan debt. (doc. 56 at 8.) He alleges that "this offset is for a debt to which [he] does not owe or legally required to pay nor was [he] given a timely notice of the purported debt or the proper and timely right to appeal." (*Id.* at 9.) He claims that the DOT "did not afford nor provide [him] with due process rights or rights to appeal the ruling alleged to be in violation of the law and [FDCPA]." (*Id.* at 9.) As discussed, the DOT is "legally obligated" to administratively offset the certified debt of another federal agency; it has "no statutory authority over the debt, nor any role in determining whether or not the debt was valid or whether [the debtor's] benefit payment should be offset." *See Johnson v. United States Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008). If a plaintiff disputes the outstanding debt, he must proceed against the agency to which he owes the debt. *See, e.g.*, *Lepelletier v. United States Dep't of Educ.*, No. CIV.

23

09-1119(RJL), 2009 WL 4840153, at *1 (D.D.C. Dec. 14, 2009) (finding DOT was not a proper party because plaintiff was seeking to dispute the debt and he could only proceed on that claim against the creditor agency); *United States v. $7,877.61 United States Currency*, No. 09-CV-6306P, 2016 WL 5078380, at *5 (W.D.N.Y. Sept. 20, 2016) (quoting *Hughes*, 2015 WL 4477961 at *3) ("To the extent Bailey challenges the validity of the underlying debt, Bailey must direct his challenge to 'the agency to which [he] owes the debt.'"). "Further, it is the creditor agency, not the disbursing agency, that is required to ensure that the debtor receives due process under the law." *Johnson*, 300 F. App'x at 862-63 (citing 31 U.S.C. § 3716(a)). Plaintiff fails to allege that the DOT is the creditor agency. Accordingly, "the proper party to address in the case of offset is the agency to which the debtor owes the debt," not the DOT. *See Hughes*, 2015 WL 4477961, at *3 (citing *Johnson*, 300 F. App'x at 862).

Because Plaintiff's claims against the Treasury Secretary are all based on the DOT's administrative offset activities under the TOP, they should be dismissed for failure to state a claim.[10]

## C.     Education Secretary

Federal Defendants argue that the claims against the Education Secretary should be dismissed under Rule 12(b)(6) because Plaintiff failed to exhaust administrative remedies. (doc. 61 at 13-14.)

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)). It provides that "no one is entitled to judicial relief for a

---

[10]Plaintiff also alleges that the SSA was involved in the attempt to "federally offset" for the student-loan debt. (doc. 56 at 8.) He does not allege that the SSA is the creditor agency, however. To the extent that he seeks to assert this as a separate claim against SSA Defendants, it is subject to dismissal for the same reasons as his claim against the Treasury Secretary. Although Federal Defendants have not expressly moved to dismiss this claim, as discussed fully below, a court may *sua sponte* dismiss claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as the plaintiff has notice of its intention and an opportunity respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).

supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993); *see also McCullough v. Sallie Mae, Inc.*, No. CIV A 08-932, 2009 WL 1788543, at *2 (W.D. La. June 19, 2009) ("When a plaintiff seeks court review of a matter where agency review has been made available, courts have relied on the jurisprudential rule requiring plaintiffs to seek recourse through the appropriate administrative agency before coming into court."). "This exhaustion requirement applies to litigants who are seeking to discharge student-loan debt." *Cottrell v. United States Dep't of Educ.*, 430 F. Supp.3d 1287, 1294 (N.D. Fla. 2019) (collecting cases).

A borrower who seeks to discharge his federal student loan debt because of total and permanent disability must comply with the administrative process outlined in 34 C.F.R. § 682.402. *See* 20 U.S.C. § 1087(a). The borrower must first notify the lender that he intends to apply for total and permanent disability discharge. 34 C.F.R. § 682.402(c)(2)(i). He must then submit to the DOE an application for loan discharge, and a certification by a doctor that he is totally and permanently disabled. *Id.* § 682.402(c)(iv). If the DOE determines that the borrower is totally and permanently disabled, the borrower's obligation to make payments on the loan is conditionally discharged for three years. *Id.* § 682.402(c)(3)(iii), (c)(7). After this three-year period, if the borrower has complied with the conditions for discharge, the balance of the loan is discharged. *Id.* § 682.402(c)(8)(i). If the DOE determines that the borrower is not totally and permanently disabled, the loan is reinstated, and collection of the loan will resume. *Id.* § 682.402(c)(8)(ii).

Here, Plaintiff alleges that the DOE approved his "Total and Permanent Disability Discharge Application" and discharged his student-loan debt. (doc. 56 at 2.)  He claims that the later decision to reinstate this debt was improper because it was "based on untruthful or incorrect information pertaining to [his] disability." (*Id.*)  He generally alleges that in 2019, "[he] notified in writing, to Defendant of [his] demand for appeal to which Defendant immediately denied." (*Id.* at 9.)  Plaintiff's conclusory allegations are insufficient to plausibly plead that he exhausted his administrative remedies with the DOE.  He does not identify the agency to which he appealed the decision to reinstate his student-loan debt, and he does not allege that he complied with the DOE's administrative procedures for challenging this decision.[11] *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").  Plaintiff does not allege that he appealed the denial of final discharge to the *Education Secretary*, or that there is a final decision from the DOE that may be judicially reviewed. *See* 34 C.F.R. § 682.402(e); 20 U.S.C. § 1087; *see e.g., Cottrell*, 430 F. Supp.3d at 1294 (dismissing debtor's unexhausted claims because the court could not consider claims never raised with the Secretary of Education); *see also United States v. Bertucci*, No. CIV. A. 00-0078, 2000 WL 1234560, at *3 (E.D. La. Aug. 29, 2000) ("Only the Secretary of Education, however, not this court, has discretion to discharge a loan.").

Plaintiff argues that the reinstatement of his 32-year-old student loan debt violates his due process rights and deprives him of the "rights and guarantees of the Double Jeopardy Clause." (doc.

---

[11]Although the amended complaint does not specify which "Defendant" received and denied Plaintiff's appeal in 2019, his response to the motion to dismiss contends that he submitted a claim for "Offset Notice without Due Process" to the SSA on April 16, 2019. (*See* doc. 67 at 18.)  Because he does not allege he submitted his claim to the DOE, he fails to allege that he satisfied the exhaustion requirement.

67 at 6.)  While a claimant is not required to exhaust administrative remedies before seeking relief in federal court for constitutional violations, "[m]erely alleging a constitutional violation or making a conclusory allegation is not enough; the claimant must have a colorable constitutional claim." *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *see Califano*, 430 U.S. at 107-09; *see, e.g., Valdez v. Astrue*, No. 3:11-CV-883-K (BK), 2011 WL 5525751, at \*2 (N.D. Tex. Oct. 17, 2011) ("Proof that a colorable constitutional claim exists must be based on more than mere conclusional allegations of due process violations.").  Plaintiff generally alleges due process violations,[12] but he does not allege that he was not given notice of the deficiencies in his application for discharge and of his rights to resubmit an application.  He does not allege that he does not have the option to submit a new application for discharge.  Although he claims that his reinstated student-loan debt violates the Double Jeopardy Clause,[13] courts have consistently held that the Clause protects only against the imposition of multiple *criminal* punishments for the same offense. *See Hudson v. United States*, 522 U.S. 93, 99 (1997).  Plaintiff's constitutional challenge lacks an arguable legal or factual basis.

Because Plaintiff has failed to allege that he has met the precondition for filing suit by exhausting his available administrative remedies with the DOE, and he has not asserted a colorable constitutional claim that excuses administrative exhaustion, his claims related to the discharge of his student-loan debt should be dismissed without prejudice. *See Martin K. Eby Construction Co., Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467, n. 4 & 5 (5th Cir. 2004) (stating that Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies, and that the

---

[12]"[A]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

[13]"The Double Jeopardy Clause protects against (1) a second prosecution after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *United States v. Paternostro*, 966 F.2d 907, 911 (5th Cir. 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

dismissal is without prejudice to the claimants right to return to court after it has exhausted its administrative remedies) (citing *Taylor v. United States Treasury Dep't.,* 127 F.3d 470, 476-78 & n. 8 (5th Cir. 1997); *see, e.g., McCullough*, 2009 WL 1788543, at *3 (applying the "jurisprudential exhaustion doctrine" and dismissing plaintiff's suit seeking total and permanent disability discharge of student-loan debt for failure to exhaust the DOE's non-statutory administrative remedies).[14]

## D.    Remaining Claims

Federal Defendants argue that to the extent Plaintiff intends to assert claims against them based on the "laundry list of causes of action or other possible theories of relief" in his amended complaint, they should be dismissed for failure to state a claim.  (doc. 61 at 17.)

It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir.1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

Here, Plaintiff's amended complaint alleges, among other things, claims for "discriminatory practices," "defamation, slander, libel, and reporting of adverse credit reporting," "dereliction of duty," breach of fiduciary duty, fraud, misrepresentations and deceptive trade practices, tortious interference, breach of contract, and violations of the Act, the ADA, the Rehabilitation Act, the FDCPA, and the Privacy Act.  (docs. 56 at 5-6; 67 at 7.)  Plaintiff has not pleaded any facts to state a claim for relief against Federal Defendants on any of these claims, statutes, or theories of recovery, however.  Dismissal of these claims against Federal Defendants is therefore appropriate. *See*

---

[14]Because Plaintiff's claims against the Education Secretary are subject to dismissal for failure to exhaust, it is unnecessary to reach Federal Defendants' argument that he failed to state a claim. (*See* doc. 61 at 14.)

*Twombly*, 550 U.S. at 555.

## V. *SUA SPONTE* DISMISSAL

A court may *sua sponte* dismiss a plaintiff's claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as the plaintiff has notice of its intention and an opportunity respond. *See Carroll*, 470 F.3d at 1177 (citing *Shawnee Int'l., N.V.*, 742 F.2d at 236). The fourteen-day time frame for filing objections to a recommended dismissal provides a plaintiff with notice and an opportunity to respond. *Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-0082-N-BH, 2012 WL 6764551, at *7 (N.D. Tex. Dec. 10, 2012), *adopted by* 2013 WL 55669 (N.D. Tex. Jan. 4, 2013) (citing *Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n.1 (E.D. Tex. Sept. 26, 2008)).

Plaintiff also sues Claims Rep in his individual capacity, (*see* doc. 56 at 7), but he does not appear to have been properly served in this lawsuit. *See* Fed. R. Civ. P. 4(i)(3). Nevertheless, "[t]he Fifth Circuit has recognized that, when one defending party establishes that the plaintiff has no cause of action, this defense generally inures also to the benefit of other similarly situated defendants." *Hernandez v. U.S. Bank, N.A.*, No. 3:13-CV-2164-O, 2013 WL 6840022, at *13 (N.D. Tex. Dec. 27, 2013) (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001)). Plaintiff has not asserted claims against Claims Rep individually that are independent from those asserted against him officially; he has also not alleged any factual basis that would subject Claims Rep to liability apart from that alleged against Federal Defendants. Moreover, to the extent Plaintiff seeks monetary damages against Claims Rep in his individual capacity for the adverse SSA decisions, those claims are barred because "Congress did not provide a remedy for monetary damages against individuals in the disability appeal arena." *Small v. Colvin*, No. CV H-14-790, 2015 WL 12551992, at *7-8 (S.D. Tex.

July 29, 2015), *adopted by* 2015 WL 12586075 (S.D. Tex. Aug. 17, 2015) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 427 (1988)) (holding that a *Bivens* remedy was unavailable in SSA actions); *see also Quansah v. Comm'r, Soc. Sec. & Disability Admin.*, No. 5:13-CV-05940 EJD, 2014 WL 2214035, at *4 (N.D. Cal. May 28, 2014) (quoting *Schweiker*, 487 U.S. at 423-25) (A *Bivens* action "may not lie for administrative violations of the Social Security Act because 'Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration.'")).[15]

Because Claims Rep is similarly situated to Federal Defendants, and the dismissal of Plaintiff's claims against them applies equally to the claims against him individually, the outstanding claims against Claims Rep individually should be dismissed *sua sponte* for failure to state a claim. *See Turner v. AmericaHomeKey Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011), *aff'd by* 514 F. App'x 513 (5th Cir. 2013) (citing *Carroll*, 470 F.3d at 1177) (dismissing action against a defendant who had not joined the motion to dismiss that was before the court; explaining that a "court has the authority to consider the sufficiency of a complaint and 'dismiss an action on its own motion as long as the procedure employed is fair'") (internal quotation marks omitted).

## VI.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically

---

[15]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at \*2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at \*2. Courts, nonetheless, may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995), or if it finds that the plaintiff has alleged his or her best case, *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). When a court "outline[s] in [its] opinion the deficiencies" of plaintiff's complaint and "plaintiff nevertheless cannot ... amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims*, 2001 WL 627600, at \*2-\*3 (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)).

Here, Plaintiff has amended his complaint and filed multiple motions and notices regarding the allegations raised in his amended complaint. Additionally, his response to the motion to dismiss has been liberally construed as a motion for leave to amend and has been granted. It therefore appears that he has alleged his best case, and any further opportunity to amend is unwarranted.

### VII. RECOMMENDATION

Federal Defendants' motions to dismiss under Rules 12(b)(1) and 12(b)(6) should be **GRANTED**, and their motion under 12(b)(5) should be **DENIED**. Plaintiff's official capacity claims against SSA Defendants challenging the decisions of the SSA regarding his Social Security benefits, and his FTCA claims against Federal Defendants in their official capacities should be **DISMISSED without prejudice** for lack of jurisdiction. His official capacity claims challenging the offset for

student-loan debt under the TOP against the Treasury Secretary and SSA Defendants should be **DISMISSED with prejudice** for failure to state a claim, and his official capacity claims against the Education Secretary challenging the decisions of the DOE regarding his student-loan debt should be **DISMISSED without prejudice** for failure to exhaust. Plaintiff's remaining claims against Federal Defendants in their official capacities should be **DISMISSED with prejudice** for failure to state a claim, and his individual capacity claims against Claims Rep should be *sua sponte* **DISMISSED with prejudice** for failure to state a claim. The motions for summary judgment should be **DENIED as moot**.

   **SO RECOMMENDED** on this 12th day of August, 2020.

                                 _____
                                 IRMA CARRILLO RAMIREZ
                                 UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

 A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                 _____
                                 IRMA CARRILLO RAMIREZ
                                 UNITED STATES MAGISTRATE JUDGE